# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| K.P., a minor by J.P., her Mother and Next Friend, | ) ) | |
| Plaintiff, | ) ) | No. 14 C 7296 |
| v. | ) ) | Judge Guzman |
| CITY OF CHICAGO SD #299, | ) ) | Magistrate Judge Cole |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

The plaintiffs, K.P. and her mother, bring this action against the defendant, City of Chicago School District, 299, claiming that it is violating the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §1400, *et. seq.*, and the Americans with Disabilities Act, 42 U.S.C. 12101 *et. seq.* (the "ADA"), by failing to provide K.P. with a particular accommodation they deem essential to her being able to take the Northwest Evaluation Association Measure of Academic Progress Test. (the "MAP Test"), which, in addition to being used for assessment of student progress, is used for admission to the non-neighborhood CPS high-schools, including magnet, charter and special interest programs.

K.P. is an eighth grader with a long history of documented learning disability and visual processing disorder that make her eligible to receive special education and related services from the School District under federal law. (Dkt. 1, Cplt. ¶¶ 10-12). The plaintiffs claim that these disabilities manifest themselves particularly in severe deficiencies in the areas of math computation and math concepts. They ask that K.P. be allowed to use a hand-held calculator during the portion of the MAP Test designed to measure "computational skills," (i.e., a student's ability to add, subtract, multiply,

and divide).[1] This, they contend, is a reasonable accommodation.

This request is in addition to other accommodations that are being allowed: (1) taking the Test individually; (2) taking the Test in a separate location; (3) taking the Test in a location with minimal distractions; (4) having a flexible schedule; (5) having two stop-the-clock breaks; (6) having the directions read orally; (7) being allowed 50% more time than other students to complete the Test; and (8) being allowed to use a hand-held calculator on the questions with an on-screen calculator. (Defendant's Exhibit J, 7/16/2014 IEP at 8-9).

With the Test date looming, the plaintiffs filed a motion for injunction relief to mandate K.P. be given the additional, desired accommodation. Judge Guzman referred the motion here for a report and recommendation. *See* 28 U.S.C. § 636 (b)(1)(B).[2]

## BACKGROUND

The dispute over the hand-held calculator appears to stem from promises plaintiff's believe were made to them during meetings with Chicago Public Schools ("CPS") learning specialists on January 29, 2013, and again some 18 months later on July 16, 2014. The specialists determined that K.P. was eligible for special education because of her learning disability. The parties agreed on an Individualized Education Plan ("IEP"). The plaintiffs claim that, on both occasions, the plan provided that K.P. would be allowed to use a hand-held calculator in connection with her math

---

[1]There is no claim that an accommodation is needed for a separate phase of the Test, which measures reading and related skills.

[2] The parties are entitled to a *de novo* review of this matter by Judge Guzman and may file written objections to this report and recommendation within fourteen days . Fed.R.Civ.P. 72(b); *Mendez v. Republic Bank*, 725 F.3d 651, 656 (7th Cir. 2013). Failure to file such objections in a timely manner waives appellate review of the report and recommendation's factual and legal conclusions. *Tumminaro v. Astrue*, 671 F.3d 629, 631 (7th Cir. 2011).

instruction, as well as a necessary accommodation during any district-wide math assessments. (Dkt. #1, ¶ 16; Dkt. #7, ¶ 3). The district has a different perception of what occurred at the meetings. What is clear is that the plans resulting from the two meetings were slightly different.

The January 2013 plan allowed many accommodations for K.P. in mathematics – including use of a calculator – but made no specific mention of a hand-held calculator. (Dkt. #17-10, at 9). The July 2014 plan, however, did. (Dkt. #1, Ex. 2, at 13). The difference becomes apparent when the purpose of the MAP Test is taken into consideration. It appears that the MAP Test is taken on a computer screen – this is confirmed by review of NWEA-MAP websites – and at least a portion of the math test has an on-screen calculator built into the Test. There are certain portions of the Test where "computation skills" are being assessed, and so the calculator drops from the screen, requiring the student to do the computation without the aid of any mechanical device. The apparent change in the IEP from January to July was motivated and necessitated by the CPS's implementation of the MAP Test.

CPS contends that neither the Board's case manager nor any other Board employee participating in the July 2014 meeting recommended that K.P. be allowed to use a hand-held calculator in connection with any district assessment. Nor were there any promises that K.P. would be allowed to use a hand-held calculator in connection with district assessment tests. (Dkt. # 17, at 7). But both IEPs – somewhat confusingly – indicate that K.P. will participate in district and state assessments without accommodations in "none" areas, while at the same time indicating that K.P. will participate in those assessments with "ALLOWABLE" accommodations/modifications that are necessary to measure academic achievement and functional performance. (Capitalization in original). Accommodations/modifications will be provided in the following areas and will be consistent with

3

those provided in the classroom . . ." While no areas are listed in the January 2013 plan (Dkt. #17-10, at 9), four are listed in the July 2014 plan: Language Arts/English/Reading, Mathematics, Biology & Physical Sciences, and Social Sciences. (Dkt. #17-11, at 9).[3]

CPS began using the MAP Test as the uniform assessment that all students undergo to qualify to take entrance exams for selective enrolment high schools in 2014 – after the January 2013 meeting but before the July 2014 one. Previously, CPS had used the Test as its district assessment tool in the 2012-13 school year. In the case of the district's selective enrollment high schools, CPS naturally requires a certain threshold performance on the MAP Test as a prerequisite to taking an admission exam. The MAP Test makes up one third of the 900-point "rubric" used for decisions on applications to the selective admissions high schools – 150 points from the math test and 150 points from the reading test. (Dkt. #17-5). K.P. sat for the reading exam on September 27, 2014, and was scheduled to take the math exam on October 4, 2014.

NWEA's guidelines for accommodations to students with special needs taking the MAP Test categorize accommodations as "Standard" and "Non-Standard." NWEA feels that the standard accommodations "will be irrelevant to, or only minimally affect, the validity of the student's test score." (Dkt. # 17-6, at 1). An example of a standard accommodation (i.e. ALLOWABLE) is the use of "a comparable calculator when a student is unable to access the on-screen calculator given in a question." (Dkt. # 17-6, at 1). Non-standard accommodations, on the other hand, "have the *potential* to bias the student's score . . . and they require special consideration." (Dkt. # 17-6, at 2

---

[3] CPS contends that, because K.P. is a private school student, the "IEP is not the operative document which identifies accommodations she receives on a day-to-day basis or during classroom assessments." (Dkt. #17, at 7). It's unclear what CPS means by this. Perhaps it is insinuating – without any support whatsoever – that while the CPS IEP plan recommends certain accommodations for K.P., she does not receive – or need – them at her private school.

4

(emphasis in original)). An example of a non-standard accommodation is the use of "a calculator for questions that do not have an on-screen calculator." (Dkt. # 17-6, at 2).

According to the NWEA website, non-standard accommodations are not precluded. "That decision belongs to schools, districts, and states." "However," the website warns, "your leadership has the responsibility for the interpretation of the test results. Your organization also has the responsibility to track non-standard accommodations so that they can be factored in interpretations." Non-standard accommodations are thought to have an adverse effect on the validity of the Test results. "The greater the use of non-standard accommodations during the test's administration, the weaker the validity of the inference that can be drawn from the student's score. This qualification should be considered when interpreting test scores or using them to make important educational decisions, such as promotion or retention in a course, classroom, or grade." http: //legacysupport. nwea.org/accommodations.

In May 2014, K.P.'s mother, J.P., apparently discovered from the CPS Office of Assessment and Enrollment website that MAP Test rules did not permit external, hand-held calculators. (Dkt. #1-1, at 2). She wrote a letter to CPS administration on May 12, 2014, asking whether CPS intended to allow K.P. to use an external hand-held calculator, which she felt was set up in the IEP. (Dkt. #1-1). At that time, K.P.'s IEP did not specify the use of a hand-held calculator, but merely a calculator. The letter went unanswered, but J.P. was contacted soon after by CPS educators about updating K.P.'s IEP, and, as a result, the reference to a hand-held calculator was apparently added. According to the plaintiffs, the administration of the MAP Test was specifically discussed during that conversation, and CPS representatives told K.P.'s parents simply to present the lEP at K.P.'s test site at the appointed time. It's unclear from the parties' submissions, but this was apparently

done at the July 2014 IEP conference referenced above.

Plaintiffs go on to claim that out of an abundance of caution J.P. contacted the CPS Office of Access and Enrollment to confirm that CPS would honor the accommodation. J.P. claims she was initially told that it would, but CPS supposedly reversed course, and, on or about September 10, 2014, the plaintiffs were informed that K.P. would not be allowed to use a hand-held calculator during the entirety of the math component of the MAP Test. The plaintiffs' concern seems to be that because the MAP Test is "adaptive" in nature, a number of incorrect math computation scores will cut K.P. off from going further on in the Test and reaching mathematical reasoning questions.

Based on the CPS's explanation of the way the MAP Test works on its website and at the oral argument on the plaintiffs' Motion on October 10, 2014, that's not how the Test works. Instead, wrong answers merely lead to easier subsequent questions. But the student is neither foreclosed from going further in the Test or scoring as high as the student's abilities will allow on those subsequent test questions.[4] She simply starts at a lower point in the hierarchy of questions and works her way

---

[4] "The NWEA MAP assessments are adaptive achievement tests in mathematics and reading that are taken on a computer. The difficulty of a test is adjusted to the student's performance so each student sees different test questions. The difficulty of each question is based on how well the student has answered the questions up to that point. As the student answers correctly, the questions become more difficult. If the student answers incorrectly, the questions become easier." http://www.cpsoae.org /NWEA-MAP%20FAQs__v7.pdf (¶17).

The impermissibility of plaintiffs' first submitting evidence to support their motion for a preliminary injunction in the reply brief, as they have done, is obvious. Reply briefs are for replying, and the inclusion of materials that could and should have been filed in the opening brief is forbidden. *See United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir.2006); *Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005). Here is an example of what the plaintiffs have done: They attach an affidavit to their reply brief from K.P.'s mother, J.P., attesting to the fact that the Test does cut off a student's opportunity to answer further questions if that student answers a certain number of questions incorrectly. (Dkt. #18-5, ¶ 20). Even if it were appropriate for the plaintiffs to have waited until their reply brief to submit evidence, the affidavit is insufficient. For one thing, there is nothing to indicate that J.P. has any knowledge, expertise, or experience with the MAP Test that would qualify her to testify as to how it works. See Rule 702, Federal Rules of
(continued...)

upwards consistent with her ability to the more difficult questions.

CPS explains its decision this way. The IEP permits only "ALLOWABLE" accommodations on district and state assessments like the MAP Test. Because the NWEA lists a hand-held calculator as a non-standard accommodation when used for questions where the screen does not provide a calculator, it cannot be used for such questions without invalidating K.P.'s math test score because, in an adaptive test like the MAP Test, CPS would be unable to extract the math computation questions for which the hand-held calculator was used from the total math score. As a result, the Test score could not be compared to that of students who did not use non-standard accommodations. That would leave K.P. with only her reading score, and she would start out 150 points in the hole in attempting to qualify to take Selective Enrollment School Entrance exams.

## ANALYSIS

### A.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008)(entering a "'preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'"). To obtain a preliminary injunction, the moving party must show that its case has "some likelihood of success on the merits," and that she has "no adequate remedy at law and will

---

⁴(...continued)
Evidence. And, for another thing, her statement is contradicted by the webpage screenshot the plaintiffs have attached to their reply brief. The screenshot – which is inexplicably from the Maranacook School District in Readfield, Maine – says nothing different from the above quote from the NWEA website: incorrect answers lead to easier questions- nothing more. (Dkt. # 18-4, at 1).

suffer irreparable harm if a preliminary injunction is denied." *Wisconsin Right To Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014); *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's repeated] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

If the moving party meets these threshold requirements, "the court weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). The "equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor." *Judge v. Quinn,* 612 F.3d 537, 546 (7th Cir. 2010). In this case, the plaintiffs have failed to demonstrate either that they have some likelihood of success on the merits or that they will suffer irreparable harm if the accommodation they seek is disallowed. Consequently, their motion should be denied.

**B.**

Plaintiffs first complain that they were not given "written prior notice" of CPS's intention not to allow the use of a hand-held calculator on all questions on the MAP math test, including those testing calculation skills. They claim this constitutes a violation of the Individuals with Disabilities Education Act, which requires such notice when the local educational agency proposes to initiate a change. 20 USC 1415(b)(3). It is a debatable point whether there was such a change, given the wording of the IEP and its explicit limitation to 'ALLOWABLE" accommodations, as well as the NWEA guidelines on non-standard accommodations. There is little help from the parties on

8

interpretation of these provisions – especially from the plaintiffs who have filed, perhaps understandably given the immanency of the Test, a somewhat abbreviated motion.[5]

But, no matter. As far as the notice requirement, there is no harm, no foul because, as is clear from the plaintiffs' submissions, they were well aware that K.P. would not be allowed the hand-held calculator accommodation on portions of the Test where there is no on-screen calculator. They have identified no prejudice resulting from lack of *written* notice. Nor have they cited any case law in support of injunctive relief for the failure to provide written notice. They've filed suit, have had the testing schedule altered to allow for adjudication of their Americans With Disabilities Act ("ADA") claim, and will have their day in court without harm to K.P. *See K.A. ex rel. F.A. v. Fulton County School Dist.*, 741 F.3d 1195, 1205 (11th Cir. 2013); *C.H. v. Cape Henlopen School Dist.*, 606 F.3d 59, 66 (3rd Cir. 2010).[6] As such, we move on to assess plaintiffs' request for an injunction based on their ADA claim.

To succeed on the merits of the plaintiff's ADA claim, they must show that K.P. is a qualified individual with a disability and that the CPS was aware of the disability yet failed to provide a reasonable accommodation. *Ekstrand v. School Dist. of Somerset*, 683 F.3d 826, 828 (7th Cir. 2012); *Klene v. Trustees of Indiana University*, 413 Fed.Appx. 919, 920-21 (7th Cir. 2011).

---

[5] The haste in this case was in part necessitated by the fact that K.P. was originally scheduled to sit for the math portion of the Test on October 4th. Sensitive to the exigency of the situation, the defendant agreed to postpone the Test to a later date to allow this case to proceed in a fashion that would not adversely affect the opportunity to file any objections to this Report and allow for review by the district court before the Test.

[6] It should also be noted that minor deviations from an IEP plan do not necessarily violate the IDEA. *CTL ex rel. Trebatoski v. Ashland School Dist.*, 743 F.3d 524, 529 (7th Cir. 2014). Yet, this is what plaintiffs seem to be arguing. When one gauges the denial of the use of a calculator on certain Test questions against the raft of accommodations being granted to K.P. – including use of a hand-held calculator throughout the rest of the Test – the devistion from the IEP (again, if there is one) arguably falls into the category of "minor."

The issue here is whether the accommodation the plaintiffs seek is reasonable. Plaintiffs have not shown they have a reasonable likelihood of success on this issue.

Plaintiffs' brief incorrectly assumes that the complaint's allegations are enough to show the accommodation they seek is reasonable. (Dkt. #7-1, at 5). Whatever might suffice as a pleading matter has nothing to do with the very different question of entitlement to preliminary injunctive relief. Plaintiffs' motion for a preliminary injunction has taken this case beyond the pleading stages and thus, allegations are no longer enough. *MainStreet Organization of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 753 (7th Cir. 2007).

Under the ADA, the plaintiffs bear the burden of demonstrating that the accommodation they seek is reasonable on its face. *Majors v. General Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013); *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). The plaintiffs have failed to do that here. Allowing K.P. to use a calculator to answer questions that are designed to assess her ability to perform math calculations is not an accommodation that in the plaintiffs' words "level the playing field." Quite the contrary. It would permit K.P. to replace her allegedly limited computational skills with a mechanical tool of infinite capacity (at least in the context of this case) that likely exceeds the computational capabilities of perhaps all – and certainly most – non-disabled students. That is not a reasonable accommodation but a substitution of artificial intelligence for the very skill the Test seeks to measure.[7]

---

[7] Suppose a test measured comprehension of written material. Obviously, a person who could not see could not take the Test without some mechanical device that would allow the student to listen to the material. But that sort of accommodation would not in the slightest impinge on the validity of the Test: because it would not affect the student's capability to understand the acquired information. But that seems quite different from the situation where the mechanical aid defeats the entire purpose of the Test by substituting mechanical for human capacity thereby preventing measurement of that which the Test is
(continued...)

Plaintiffs allow that K.P.'s use of a hand-held calculator throughout the entire math test will lead CPS to invalidate the results, but insist that should that should that occur that will raise an issue that may be "ultimately be decided in this forum or elsewhere." (Dkt. # 7-1, at 6). Implicit in this argument is a recognition that the Test will be invalidated, thereby ensuring future litigation over the permissibility of that invalidation. But, an accommodation that serves to scrap the results of a three-hour test – and prompts additional litigation – does not qualify as "reasonable." Accommodations are not reasonable if they impose undue financial and administrative burdens. *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 288 n.17 (1987). *See also Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)("An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it."); *Rene ex rel. Rene v. Reed*, 751 N.E.2d 736, 746 (Ind.App. 2001)("State need not honor certain accommodations called for in the Students' IEPs where those accommodations would affect the validity of the test results.").[8]

---

[7](...continued)
intended to measure.

[8] Plaintiffs counter the defendant's citation to *Rene* with *Chapman v. CA Dept. Of Educ.*, 229 F.Supp.2d 981 (N.D. Cal. 2002), pointing out that *Chapman* dismissed the *Rene* decision as reaching its conclusion with little analysis. 229 F.Supp.2d at 988. But *Rene's* analysis on the question of whether an accommodation was appropriate when it precluded the assessment of the skill to be tested far exceed any analysis provided by *Chapman*. The *Chapman* opinion demonstrates no evaluation of that issue, but rather whether a student can "access" a test. 229 F.Supp.2d at 987, 989. There is no dispute here that K.P. is able to access the MAP Test including the computer screen on which it is taken. Moreover, *Chapman* indicated that the plaintiffs in that case were entitled to an assessment of the skills tested, even if they were incapable of mastering them. 229 F.Supp.2d at 986-87. And the court specifically declined to address the issue of an accommodation affecting Test validity. 229 F.Supp.2d at 989. Hence, that case does not resolve the issue. and thus is of little help here. *See U.S. ex rel. Lusby v. Rolls Royce Corp.*, 570 F.3d 849, 851-52 (7th Cir.2009); *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc*. 235 F.R.D. 435, 445 (N.D.Ill.2006)(collecting cases).

**C.**

Plaintiffs also fail to demonstrate that they will suffer irreparable harm without injunctive relief. They contend that if K.P. is not allowed to use a hand-held calculator throughout the MAP math test – even during portions testing computational skills where no other student will be allowed to use a calculator – her ability to demonstrate her comprehension of more abstract mathematical concepts will be seriously undermined, if not foreclosed. They assume that K.P. could not even then apply to the exclusive enrollment high schools she wishes to attend. Reliance is placed solely on *Rush v. Nat'l Bank of Medical Examiners*, 268 F.Supp.2d 673 (N.D.Tex. 2003). (Dkt. #7-1, at 6). The case does not support the plaintiffs' position. Instead, it lends support to the idea that the accommodation plaintiffs are demanding is not reasonable.

In *Rush*, the plaintiff demonstrated that he had a "reading impairment" that seriously decreased the rate at which he read with comprehension. The Medical Licensing Exam required extensive reading and extensive subject-matter knowledge. The plaintiff's disability hamstrung him, not on acquiring, processing, or explaining that subject matter, but on completing the required reading within the time limits of the exam. 268 F.Supp.2d at 678. As such, the court granted the injunction mandating that the plaintiff be allowed double time to complete the exam. This would test him on his mastery of the material, and not the speed at which he could read. *Id.* at 679.

K.P.'s situation is not anything like that of the plaintiff in *Rush*. K.P. demands to use a calculator on a math test question designed to test her computation skills. No other child is or will be allowed such an accommodation. That's because the use of a calculator makes computation skills – the very thing to be tested – irrelevant. Unlike the accommodation at issue in *Rush*, the accommodation K.P. seeks actually precludes her being tested on the skills the questions are

designed to assess. An accommodation that defeats the very purpose of a test is not reasonable. *See Falchenberg v. New York State Dept. of Educ.*, 338 Fed.Appx. 11, 13 (2nd Cir. 2009)("... where a test applicant seeks an accommodation that would prevent her scores from accurately evaluating the skills intended to be measured by the test, the denial of the requested accommodation is not unlawful."); *Law School Admission Council, Inc. v. State*, 222 Cal.App.4th 1265, 1274, 166 Cal.Rptr.3d 647, 654 (3rd Dist. 2014)(testing entity must ensure that examination results "accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (*except where those skills are the factors that the examination purports to measure*)." (quoting 28 C.F.R. § 36.309(b)(1)(I)))(emphasis in original); *Hamilton v. City College of City University of New York*, 173 F.Supp.2d 181, 186 (S.D.N.Y. 2001)(college's failure to follow its ADA policy allowing use of a calculator not a violation where evidence showed use of calculator would defeat objectives and purposes of examination).

## D.

Plaintiffs, then, have not shown that they are seeking a reasonable accommodation for K.P. As such, they have failed to show they have some likelihood of success on the merits of their claim and are not entitled to a preliminary injunction. But they have also fallen short as far as demonstrating irreparable harm. As already noted, their lone argument in that regard is not supported by the case they rely upon. What is more, the harm they fear – K.P. failing the math test and not making the cut for applications to exclusive enrollment high schools – cannot ever occur.

At the oral argument, counsel for the defendant announced K.P.'s reading test score, which just came out. Happily, her score was sufficiently high that even if she did not take the upcoming

math test, she still would be entitled to sit for the Selective Enrollment Test for placement in select high schools, the disqualification from which the plaintiffs have alleged would "severely circumscribe the educational opportunities available to her." (Dkt. 1, Cplt. ¶ 22).

As explained at the oral argument, an inability to answer certain questions on the part of the Test that measures math computational skills does not preclude a student from being able to move on to answer questions on the second and third successive phases of the Test.[9] It would only result in the student starting with easier questions in the second phase of the Test. But it would not preclude the student from scoring as high in the second and succeeding phases of the Test as their skills permitted. It would simply mean that starting at a lower level, they had to answer the easier questions at the lower levels before proceeding to the more difficult questions in the higher levels. In short, performance on the computational phase of the Test does not dictate the level of performance on succeeding. It should be noted that the second and third and succeeding phrases of the Test to not employ or require calculators whether on the screen or hand held.

**E**.

For preliminary relief to be granted, irreparable harm need not be certain, but it must be *likely*. That is, there must be more than a mere possibility that the harm will come to pass. *Winter, supra*; *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011). Even without the use of a hand-held calculator throughout the entire math portion of the Test, K.P. might achieve a score on the total Test that would qualify her to take a Selective Enrollment Entrance Exam. *See, e.g., Baer v. Nat'l Bd. Of Med. Examiners*, 392 F.Supp.2d 42, 48-49 (D. Mass. 2005)(noting that

---

[9] Counsel for the defendant was uncertain if there was a fourth phase. But if there was, it would function in the same way as the earlier phases.

irreparable harm was speculative because examinee might pass Test without desired accommodation). But we need not rely on that possibility, for as already discussed, K.P. happily has achieved a sufficiently high reading score on that portion of the Test that if she did not even take the math part she is eligible to take the Selective Enrollment Entrance Exam – the very thing this suit sought to achieve.

Moreover, students with disabilities are exempt from having to achieve a 24 percentile in *both* math and reading to qualify. CPS makes an additional accommodation for these students by requiring a combined score of a 48 percentile. Moreover, while the Test is adaptive, it does not, as plaintiffs suggest, cut the student off from further testing after a certain number of wrong answers. Instead, the student is given easier questions. This would no doubt lower the student's possible score but not to the extent the plaintiffs claim. And, it cannot be forgotten that if K.P. obtains an injunction and uses a hand-held calculator throughout the Test, her math score will be invalidated, and she will be left with only those points she achieves in the reading test to hit the 48 percentile mark. The harm plaintiffs fear is more likely with the injunction than without. In exercising its equitable powers, a court must avoid doing more harm than good. Accordingly, an injunction will not issue if its issuance will cause a greater risk of harm than would be caused if the injunction did not issue. *Hair Associates, Inc. v. National Hair Replacement Services, Inc.*, 987 F.Supp. 569, 591 (W.D.Mich.1997).

## F.

Finally, there is the matter of the public interest. *Onyango v. Nick & Howard, LLC,* 559 Fed.Appx. 571, 572 (7th Cir. 2014); *Korte*, 735 F.3d at 665. The plaintiffs correctly contend that the public has an interest in maximizing educational opportunities for disabled children. But the desideratum is to try to provide those children with – again to use the plaintiffs' words – a "level

15

playing field" – not to give them an unfair advantage over other children. Congress did not enact the ADA in the name of discriminating against persons free from disability. That is, the ADA does not "'mandate a policy of 'affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled.'" *Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 700 (7th Cir.1998). *See also Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 679 (7th Cir.1998). The same rationale applies in cases like the instant case.

Yet, if plaintiffs contention is accepted, while other students are working through mathematical calculations in their head as best as their capabilities will permit, with inevitable mistakes, K.P. need only turn to her calculator to achieve likely perfect results. Moreover, because of the increased speed with which the calculator will enable her to go through the problems, K.P. will have more time than other students to answer the more difficult questions as she progresses through the phases of the Test, thereby effectively multiplying K.P.'s extra time accommodation as well.

The only sticking point might be if the plaintiffs' contention – which is unsupported by any evidence – that incorrect answers on the calculation questions will rob K.P. of her opportunity to answer questions about mathematical concepts is correct. Even if it is, though, there is an inequity when the other students are considered. Suppose there is an "adaptive" basketball skills competition that includes a dunk portion and three-point shooting portion. For every successful dunk, a player gets 5 three-point shot attempts. One player – who has no problem shooting long range – has a handicap that prevents him from jumping and he demands and receives a ten-foot ladder for the dunk portion of the Test. The accommodated player is guaranteed not only a perfect score on the dunk

16

contest, but far more three-point attempts that the other players. That's not a "level playing field," and the public interest in fairness to the other players – the other students here – is compromised.

## CONCLUSION

It is respectfully recommended that the plaintiffs' motion for a preliminary injunction [Dkt. # 4, 7] be DENIED.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

Dated October 14, 2014