# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| K.P., a minor, by J.P., her mother and next friend, | ) ) ) |
| Plaintiff, | ) No. 14 C 7296 ) |
| vs. | ) Judge Ronald A. Guzmán ) |
| CITY OF CHICAGO SD #299, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff alleges that defendant violated the Individuals with Disabilities Education Act ("IDEA") and the Americans with Disabilities Act ("ADA") by refusing to let her use a hand-held calculator while taking the Northwest Evaluation Association Measure of Academic Progress ("MAP") test. Plaintiff filed a motion for a preliminary injunction, which the Court referred to Magistrate Judge Cole for a Report and Recommendation ("R&R"). After briefing and argument, Judge Cole issued an R&R recommending that the motion be denied. The case is before the Court on plaintiff's objections to the R&R. For the reasons set forth below, the Court overrules the objections, adopts the R&R in its entirety, and denies plaintiff's motion for preliminary injunction.

## Facts

K.P. is an eighth grader who is eligible for special education services. (Compl. ¶ 3.) In January 2013, the parties created an Individualized Education Plan ("IEP") for K.P. that includes "use of a calculator" as a classroom mathematics accommodation, and states that K.P. will "participate in the district [and state] assessments WITH ALLOWABLE accommodations/modifications that are

necessary to measure academic achievement and functional performance." (R&R at 3; *see* City Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 10, 1/29/13 IEP at 7, 9.) The 2013 IEP does not list a hand-held calculator as an accommodation. (*See generally* City Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 10, 1/29/13 IEP.)

Sometime between January 2013 and July 2014, defendant started requiring students to obtain a threshold MAP score to qualify to take the entrance exams for selective enrollment high schools and using the test score as one-third of the 900 point selection rubric for those schools. (R&R at 4.) The MAP test is taken on a computer, and for a portion of the math questions, an on-screen calculator pops up for the student to use. (*Id.* at 3.) For the rest of the math questions, however, the calculator disappears, and the students must perform computations on their own. (*Id.*)

The Northwest Evaluation Association ("NWEA"), which created the MAP test, recognizes two kinds of accommodations: (1) standard (also called allowable) accommodations; and (2) non-standard accommodations. (*Id.* at 4; *see* Def.'s Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 6, NWEA Accommodations for MAP® Assessments at 1-2.) Standard accommodations are those that "will be irrelevant to, or only minimally affect the validity of the student's test score." (R&R at 4; *see* Def.'s Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 6, NWEA Accommodations for MAP® Assessments at 1.) Non-standard accommodations are those that "have the *potential* to bias the students' test score," and include "[u]sing a calculator for questions that do not have an on-screen calculator." (R&R at 4; *see* Def.'s Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 6, NWEA Accommodations for MAP® Assessments at 2) (emphasis original). The NWEA does not preclude schools from making non-standard accommodations during MAP tests if, for example, an IEP requires it. (*See* Def.'s Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 6, NWEA Accommodations for MAP® Assessments at 2.) "However, [the

school] leadership has the responsibility for . . . interpret[ing] . . . the test results" and "track[ing] non-standard accommodations so they can be factored in interpretations." (*Id.*) Further, the NWEA states that "[t]he greater the use of non-standard accommodations . . . , the weaker the validity of the inference that can be drawn from the student's score," which "should be considered when interpreting test scores or using them to make important educational decisions." (*Id.*)

In May 2014, after discovering that the use of hand-held calculators was generally not permitted during the MAP test, K.P.'s mother wrote a letter to defendant asking whether K.P. would be allowed to use one pursuant to her IEP. (R&R at 5.) Defendant did not respond to her letter, but she was contacted shortly thereafter about updating K.P.'s IEP. (*Id.*) The parties met in July and created a new IEP that lists both "use of a calculator" and "[u]se [of a] hand held calculator" as classroom mathematics accommodations, but also states that K.P. will take district and state assessments "WITH ALLOWABLE accommodations/modifications." (*Id.* at 3-4; *see* City Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 11, 7/16/14 IEP at 6-9.)

In September 2014, K.P.'s mother asked defendant to confirm that K.P. would be allowed to use a hand-held calculator during the math portion of the MAP test, which K.P. was scheduled to take on October 4, 2014.[1] (R&R at 6.) Defendant told her that K.P. would not be allowed to do so, and this suit followed.

---

[1] Defendant agreed to postpone the test until after this Court's ruling on the objections to the R&R. (*See id.* at 9 n.5.)

**Discussion**

Federal Rule of Civil Procedure 72(a) instructs the Court to make a de novo determination of those portions of the R&R to which plaintiff objects. *Id*. The Court may "accept, reject, or modify" the R&R, "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

Plaintiff objects to the Magistrate Judge's conclusion that she is unlikely to succeed on her claim that defendant violated the IDEA by failing to give her parents prior notice of the removal of the hand-held calculator accommodation from her IEP. (*See* Compl., Count I); 20 U.S.C. § 1415(b)(3)(A) (requiring a school to give "[w]ritten prior notice to the parents of the child, . . . whenever [it] . . . propose[s] to initiate or change" an IEP). As an initial matter, the Magistrate Judge said it was not clear that there had actually been a change in plaintiff's IEP, "given [its] wording . . . [,] its explicit limitation to 'ALLOWABLE' accommodations, [and] the NWEA guidelines on non-standard accommodations." (R&R at 8.) Even if there had been one, however, Judge Cole said K.P.'s parents had actual notice of the alleged change, and thus the lack of written notice neither prejudiced them nor violated the IDEA:

> . . . . As far as the notice requirement, there is no harm, no foul because, as is clear from the plaintiffs' submissions, they were well aware that K.P. would not be allowed the hand-held calculator accommodation on portions of the Test where there is no on-screen calculator. They have identified no prejudice resulting from lack of *written* notice. Nor have they cited any case law in support of injunctive relief for the failure to provide written notice. They've filed suit, have had the testing schedule altered to allow for adjudication of their Americans With Disabilities Act ("ADA") claim, and will have their day in court without harm to K.P.

(*Id.* at 9) (emphasis original).

Plaintiff contends that this conclusion is erroneous because even a non-prejudicial violation of the notice provision is actionable. The Court disagrees. The purpose of the IDEA's notice

4

provision is "to ensure that the parents of a child with a disability are both notified of decisions affecting their child and given an opportunity to object to these decisions." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 70 (3d Cir. 2010). "Thus in cases where a violation of a notification requirement does not actually impair the parents' knowledge of, or participation in, educational decisions, the violation is not a substantive harm under the IDEA." *Id.*; *see K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1204-05 (11th Cir. 2013) (dismissing IDEA claim, though school had not provided required notice, because the violation did not prejudice the parents); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990) ("Although we are not called upon to decide whether all violations of [IDEA's] procedural requirements are to be assessed according to a separate test of prejudice, we are of the opinion that inquiry is proper [in the notice context], since the only error was one of technical noncompliance which did not result in any substantive deprivation."), *superseded in part on other grounds by regulation as recognized in*, *N.W. ex. re. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611 (6th Cir. 2014); *see also Hjortness ex rel. Hjortness v. Neenah Jt. Sch. Dist.*, 507 F.3d 1060, 1065 (7th Cir. 2007) (stating, in the context of a school's failure to hold a second IEP meeting, that "this procedural violation does not rise to the level of a denial of a free appropriate public education . . . . [because the] parents' rights were [not] in any meaningful way infringed"). Such is the case here. Therefore, the Court agrees with Magistrate Judge Cole that plaintiff does not have a likelihood of success on the merits of her IDEA claim.

Judge Cole also concluded that plaintiff is not likely to succeed on her ADA claim because she did not show that the accommodation she seeks is reasonable:

> Allowing K.P. to use a calculator to answer questions that are designed to assess her ability to perform math calculations is not an accommodation that in the plaintiffs' words "level the playing field." Quite the contrary. It would permit K.P. to replace her allegedly limited computational skills with a mechanical tool of infinite capacity

> (at least in the context of this case) that likely exceeds the computational capabilities of perhaps all – and certainly most – non-disabled students. That is not a reasonable accommodation but a substitution of artificial intelligence for the very skill the Test seeks to measure.
>
> Plaintiffs allow that K.P.'s use of a hand-held calculator throughout the entire math test will lead CPS to invalidate the results, but insist that should . . . that occur that will raise an issue that may be "ultimately be decided in this forum or elsewhere." (Dkt. # 7-1, at 6). Implicit in this argument is a recognition that the Test will be invalidated, thereby ensuring future litigation over the permissibility of that invalidation. But, an accommodation that serves to scrap the results of a three hour test – and prompts additional litigation – does not qualify as "reasonable." Accommodations are not reasonable if they impose undue financial and administrative burdens.

(R&R at 10-11) (footnotes and citations omitted).

Plaintiff contends that she offered evidence, the declarations of her mother, J.P., and her learning disabilities specialist, Katherine Siavelis, to show that her use of a hand-held calculator would not render her test results invalid, but Judge Cole erroneously refused to consider them. (*See* Pl.'s Objs. at 4; R&R at 6-7 n.4 (stating that he disregarded the declarations because plaintiff submitted them for the first time on reply and the relevant portion of J.P.'s declaration was inadmissible).) Even if Judge Cole had considered the declarations, however, it would not have helped plaintiff's case. Siavelis' declaration does not address the validity issue at all, and J.P.'s declaration only addresses it through inadmissible hearsay. (*See* Pl.'s Reply, Ex. 4, J.P. Decl. ¶¶ 34-35 (quoting a passage from an article published by an education consortium); *see generally id.*, Ex. 5, Siavelis Decl.).) Because the declarations would not have bolstered plaintiff's proof even if Judge Cole had considered them, his refusal to do so was not erroneous.

Plaintiff also argues that there is no basis for the finding that K.P.'s use of a hand-held calculator would, in fact, render the test results invalid. (Pl.'s Objs. at 7.) Once again, the Court disagrees. The record shows that the MAP test's creator: (1) deems the use of a hand-held calculator

to be a non-standard accommodation, *i.e.*, one that has the potential to bias the score; (2) cautions schools that "the greater the use of non-standard accommodations . . . , the weaker the validity of the inference that can be drawn from the student's score," and discourages them from relying on such inferences "to make important educational decisions"; and (3) makes schools responsible for interpreting MAP test results and factoring the use of non-standard accommodations into those interpretations. (R&R at 4; *see* Def.'s Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 6, NWEA Accommodations for MAP® Assessments). It further shows that defendant, the party vested with the authority to and responsibility for interpreting the test results, deems MAP scores obtained by a student who uses a hand-held calculator throughout the test to be invalid. (Def.'s Mem. Opp'n Pl.'s Mot. Prelim. Inj., Ex. 4, Barker Decl. ¶¶ 1, 13-14 (testimony of defendant's Chief Accountability Officer that, based on the NWEA guidance, "[i]f defendant learn[s] that a student used a non-standard accommodation, his/her score will be invalidated" and will not be used for determining eligibility for selective enrollment high school testing or admissions).) In short, Judge Cole's conclusion that the accommodation plaintiff seeks is unreasonable because it would invalidate her MAP test results is fully supported by the record.

Finally, plaintiff objects to Judge Cole's determination that the public interest disfavors injunctive relief because K.P.'s use of a hand-held calculator would give her more time to complete the test than other students. (Pl.'s Objs. at 3; *see* R&R at 16.) Plaintiff asserts that the MAP test is not timed, and thus the "advantage" identified by the Magistrate Judge is illusory. Even if plaintiff's assertion about the test is true, and she cites no evidence to support it, that fact would not change Judge Cole's conclusion about the public interest factor. Rather, as the R&R makes clear, Judge

7

Cole's conclusion was based on the overall advantage over other students that the requested accommodation would give K.P.:

> [I]f plaintiffs' contention is accepted, while other students are working through mathematical calculations in their head as best as their capabilities will permit, with inevitable mistakes, K.P. need only turn to her calculator to achieve likely perfect results. Moreover, because of the increased speed with which the calculator will enable her to go through the problems, K.P. will have more time than other students to answer the more difficult questions as she progresses through the phases of the Test, thereby effectively multiplying K.P.'s extra time accommodation as well.
>
> The only sticking point might be if the plaintiffs' contention – which is unsupported by any evidence – that incorrect answers on the calculation questions will rob K.P. of her opportunity to answer questions about mathematical concepts is correct. Even if it is, though, there is an inequity when the other students are considered. Suppose there is an "adaptive" basketball skills competition that includes a dunk portion and three-point shooting portion. For every successful dunk, a player gets 5 three-point shot attempts. One player – who has no problem shooting long range – has a handicap that prevents him from jumping and he demands and receives a ten-foot ladder for the dunk portion of the Test. The accommodated player is guaranteed not only a perfect score on the dunk contest, but far more three-point attempts that the other players. That's not a "level playing field," and the public interest in fairness to the other players – the other students here – is compromised.

(R&R at 16-17.) Because the time element was not determinative of the public interest inquiry, Judge Cole's alleged error is not a basis for rejecting his conclusion.

**Conclusion**

For the reasons set forth above, the Court overrules plaintiff's objections to Magistrate Judge Cole's R&R, adopts the R&R [21] in its entirety, and denies plaintiff's motion for a preliminary injunction [4].

**SO ORDERED.**                                          **ENTERED:   February 25, 2015**

_____
**HON. RONALD A. GUZMAN
United States District Judge**